IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GRADY KENT                                                    PLAINTIFF

AND

NATURES SECOND CHANCE HAULING, LLC,
AND CONTINENTAL INDEMNITY COMPANY                            INTERVENORS

VERSUS                          CIVIL ACTION NO. 3:17-cv-350-WHB-JCG

INTERNATIONAL PAPER COMPANY
AND JOHN DOES 1-5                                            DEFENDANTS

## INTERNATIONAL PAPER COMPANY'S
## AMENDED/SECOND MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant International Paper Company ("IP") files this Amended/Second Motion for Summary Judgment because there is no genuine issue of material fact for trial. The undisputed record evidence demonstrates that under Louisiana law, International Paper is entitled to judgment as a matter of law on Plaintiff's negligence claim. The claim should be dismissed with prejudice.

In Support of its amended Motion, IP relies the following exhibits that were previously filed on the court's docket:

Exhibit A:   Excerpts from David Carter's Deposition, (Doc. No. 72-1, 86-6)
Exhibit B:   March 2016 Email Chain, (Doc. No. 72-2)
Exhibit C:   IP Safety Incident Alert, (Doc. No. 72-3)
Exhibit D:   Red Strap Policy, (Doc. No. 72-4)
Exhibit E:   Excerpts from Albert Browhaw's Deposition, (Doc. No. 72-5, 86-5)
Exhibit F:   IP's Responses to Plaintiff's First Set of Interrogatories, (Doc. No. 72-6)
Exhibit G:   Purchase Order & Terms and Conditions, (Doc. No. 72-7)
Exhibit H:   Excerpts from Grady Kent's Deposition, (Doc. Nos. 72-8, 86-1)
Exhibit I:   Nature's Second Chance 2016 Memo, (Doc. No. 72-9)
Exhibit J:   Lane VanIngen's Expert Report, (Doc. No. 72-10)
Exhibit K:   Plaintiff's Responses to IP's First Set of Interrogatories, (Doc. No. 72-11)
Exhibit L:   Photograph of Grady Kent's Truck, (Doc. No. 72-12)

**EXHIBIT A**

Exhibit M:   Excerpts from Daniel Norsworthy's Deposition, (Doc. No. 72-13, 86-4)
Exhibit N:   Excerpts from Michael Jones' Deposition, (Doc. No. 72-14)
Exhibit O:   Rick Hunter Expert Report, (Doc. No. 72-15)
Exhibit P:   Life Lesson, (Doc. No. 72-16)
Exhibit Q:   Plaintiff's Complaint, (Doc. No. 72-17)
Exhibit R:   Plaintiff's Amended Complaint, (Doc. No. 72-18)
Exhibit S:   IP's Answer to Complaint, (Doc. No. 72-19)
Exhibit T:   IP's Answer to Amended Complaint, (Doc. No. 72-20)
Exhibit U:   Excerpts from David Paulus' Deposition, (Doc. No. 72-21)
Exhibit V:   David Paulus' Expert Report, (Doc. No. 72-22)
Exhibit W:   Photograph of Sign, (Doc. No. 72-23)
Exhibit X:   8-2015 Email Chain, (Doc. No. 86-3)
Exhibit Y:   November 2015 Unsafe Load Pattern Email Chain (Doc. No. 86-2)

For the reasons more fully set forth in the accompanying memorandum of authorities, Plaintiff's negligence and premises liability claims fail as a matter of law.

**WHEREFORE,** International Paper Company respectfully requests that the Court grant this amended Motion for Summary Judgment in its entirety and dismiss Plaintiff's negligence/premises liability claim with prejudice.

This the _____ day of September, 2018.

Respectfully submitted,

INTERNATIONAL PAPER COMPANY

By Its Attorneys,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By:_____

Bradley W. Smith (MS Bar No. 9834)
Nakimuli Davis-Primer (MS Bar No. 103320)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING:  Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL:  One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi  39211
Telephone:  (601) 351-2400
Facsimile:  (601) 351-2424
bsmith@bakerdonelson.com
ndavisprimer@bakerdonelson.com

## CERTIFICATE OFSERVICE

I hereby certify that I have this day electronically filed the foregoing *Amended/Second Motion for Summary Judgment* with the Clerk of the Court using the ECF system which sent notification of such filing to counsel of record.

This _____ day of September, 2018.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GRADY KENT                                                    PLAINTIFF

AND

NATURES SECOND CHANCE HAULING, LLC,
AND CONTINENTAL INDEMNITY COMPANY                            INTERVENORS

   VERSUS                          CIVIL ACTION NO. 3:17-cv-350-WHB-JCG

INTERNATIONAL PAPER COMPANY
AND JOHN DOES 1-5                                            DEFENDANTS

---

**INTERNATIONAL PAPER COMPANY'S MEMORANDUM IN SUPPORT
OF AMENDED/SECOND MOTION FOR SUMMARY JUDGMENT**

---

Bradley W. Smith (MS Bar No. 9834)
Nakimuli Davis-Primer (MS Bar No. 103320)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING:  Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL:  One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi  39211
Telephone:  (601) 351-2400
Facsimile:  (601) 351-2424
bsmith@bakerdonelson.com
ndavisprimer@bakerdonelson.com

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF UNDISPUTED FACTS ........................................................................2

    **A.**     The Parties. ........................................................................................................2

          1.     International Paper Company. .................................................................2

          2.     Nature's Second Chance Hauling. ..........................................................3

          3.     Grady Kent. ............................................................................................4

    **B.**     The Date of the Incident. ...................................................................................5

          1.     Plaintiff loaded his truck and drove over an hour to the mill. ..............5

          2.     Plaintiff did not observe tension on the strap before opening his truck doors. ...........................................................................................6

          3.     Plaintiff positioned his body directly in front of the trailer doors as he pushed open the doors. ..........................................................7

    **C.**     The Investigations. .............................................................................................8

          1.     WestRock and NSC concluded that the incident occurred because of the improper load pattern used by Plaintiff to load his trailer. ...............8

          2.     International Paper's investigation revealed that Plaintiff's load pattern and body position caused the incident. ...........................................9

    **D.**     Plaintiff's Claims. ..............................................................................................9

III. SUMMARY JUDGMENT STANDARD.............................................................................10

IV. ARGUMENT........................................................................................................................11

    **A.**     International Paper is Immune From Liability for Plaintiff's Injury. ...................11

    **B.**     Plaintiff's Negligence Claim Fails As A Matter of Law. .....................................13

          1.     Legal Standard. ....................................................................................13

          2.     International Paper Did Not Owe Plaintiff a Duty to Warn.....................14

               a.     IP did not create the hazard............................................................14

               b.     IP did not control Plaintiff's actions. .............................................16

               c.     IP is not contractually liable for Plaintiff's injury. ........................17

          3.     Even if International Paper owed Plaintiff a duty to keep the premises reasonably safe, IP did not breach this duty. ..............................17

          4.     International Paper did not cause Plaintiff's injury. .................................18

    **C.**     Plaintiff's Premises Claim Should be Dismissed as a Matter of Law. .................19

          1.     Legal Standard. ....................................................................................19

           2.     Plaintiff's claims fail under Article 2322...................................................19

           3.     Plaintiff's claim fails under Articles 2317 and 2317.1. ...........................20

V. CONCLUSION.......................................................................................................................21

# I.  INTRODUCTION

This is a negligence/premises liability case.  Plaintiff Grady Kent, a truck driver for Intervenor Nature's Second Chance Hauling ("NSC"), filed this suit claiming Defendant International Paper Company ("International Paper" or "IP") is liable for an injury Plaintiff sustained when he opened the doors of his trailer and two bales of old corrugated container ("OCC") material that Plaintiff was delivering to an IP mill fell out of the trailer onto him.  The undisputed record evidence demonstrates that IP had a purchase order agreement with WestRock on a delivered basis, WestRock subcontracted with NSC to deliver OCC bales to IP's Bogalusa, Louisiana mill ("the mill"), Plaintiff loaded his trailer on the date of the incident in Mississippi, Plaintiff did not secure the bales that he loaded, Plaintiff did not follow safe loading procedures, and Plaintiff did not inspect the load to discern whether bales could shift during transit even though falling freight is a known recognized hazard in the trucking industry.  After arriving at the mill, Plaintiff used a red strap to determine whether bales might be leaning against the trailer doors like he had done on almost 20 prior occasions.  After detecting no tension on the red strap, Plaintiff opened the right trailer door, without incident.  As Plaintiff opened the left trailer door, with his body positioned between the bales and the door (in violation of industry standard), two OCC bales fell out of his trailer onto him breaking his left leg.

Even when viewing the evidence in the light most favorable to Plaintiff, the undisputed facts demonstrate that IP is immune from tort liability for Plaintiff's injury and that Plaintiff's injury was caused by the unsafe manner in which he loaded the bales and his improper body position as he opened the trailer doors, not because of any action or inaction of IP.  IP was not negligent.  Moreover, under Louisiana law, IP did not owe Plaintiff a duty to warn or to correct his unsafe behavior.  There is no genuine issue of material fact to preclude summary judgment in favor of IP.  Plaintiff's claim should be dismissed with prejudice.

## II. STATEMENT OF UNDISPUTED FACTS

**A.    The Parties.**

      1.    *International Paper Company.*

International Paper owns a paper mill located in Bogalusa, Louisiana ("IP mill" or "the mill").  IP produces fiber based packaging, pulp, and paper at the mill.  IP notifies its carriers who deliver fiber material—such as OCC bales—of its safe loading pattern requirements.  (*See* Exhibit A, Carter Dep. 40:13-18, 42:11-19, 79:5-15; Exhibit B, Email Chain (WestRock indicating that it knew of IP's requirements prior to the incident forming the basis of this litigation))  Specifically, International Paper requires that the bales closest to the trailer doors are loaded lengthwise and no more than two bales high.  (Exhibit C, IP Safety Incident Alert)  IP also has a red strap policy.  (Exhibit D, Red Strap Policy)

The red strap policy is a standard operating procedure that generally requires that an IP employee observe the driver using a red strap before the driver opens his or her trailer doors. (Exhibit E, Photograph of Sign)  The red strap policy explains that "[b]ales may shift in transit and lean against van door.  The use of the red strap is to prevent bales from falling out of the van when opening the door." (Ex. D)  The written policy also warns that "**A falling bale can cause severe injury or death**."  (*Id.* at IP0011 (emphasis in original))  An IP employee must observe the driver using the red strap to open the doors.  (*Id.*)  If there is no tension observed on the strap, the driver removes the red strap and proceeds to open the trailer doors.  (*Id.*)

There were no incidents of bales falling off a truck at the mill before Plaintiff's incident on March 30, 2016.  (Carter Dep. 80:19-81:11; Exhibit E, Browhaw Dep. 66:15-67:5, 85:15-86:3 (testifying that out of the 400 times he has performed the red strap procedure he has not known a bale to fall))  The red strap is still used at the mill; and, there have been no such incidents since March 30, 2016.  (*See id.*; *see also* Carter Dep. 29:3-9)

2.      *Nature's Second Chance Hauling.*

In March 2016, IP had a purchase order agreement with WestRock for recycled or recovered corrugated material on a delivered basis.  (Exhibit F, IP's Resp. to Interrog. No. 12) Pursuant to the purchase order, deliveries were "FOB destination" meaning that International Paper did not accept or otherwise own the fiber material until it began offloading the material. (*See* Exhibit G, Purchase Order Terms & Conditions)  The purchase order also provided that WestRock "is solely responsible for the safety of the employees of [WestRock] and its subcontractors and the means and methods utilized by it or its subcontractors' employees in performing the services . . . and [WestRock] agrees that [International Paper] shall have no such responsibility."  (*Id.* at ¶ 23)

WestRock subcontracted with Nature's Second Chance Hauling ("NSC") to deliver OCC material to the mill.  (Ex. F, IP's Resp. to Interrog. No. 12)  IP did not have a contractual agreement with NSC.  (*Id.*)  In light of the agreement between WestRock and NSC, however, NSC transported OCC bales from Mississippi to the mill in March 2016.  (*Id.*)  NSC had a loading policy to ensure the safety of its employees who delivered the OCC material.  (*See* Ex. I, NSC Memo)  In August 2015, WestRock sent NSC an email containing the red strap policy, (Exhibit X, 8-2015 Email), and on November 23, 2015, WestRock informed NSC that the IP's "Safe Load Procedure is that the last row of bales must be loaded lengthwise to the trailer and no more than two bales high."  (Exhibit Y, 11-2015 Unsafe Load Pattern Email Chain)  NSC notified its drivers of the red strap policy.  (*See* Plf. Dep. 78:24-81:7 (explaining he was informed about the policy by his NSC supervisor); *see also* Ex. B (indicating WestRock's carriers knew about IP's requirements))

Ultimately, as a federal motor carrier, NSC was responsible for training, supervising, and ensuring its drivers complied with the Federal Motor Carrier Safety Administration rules and

regulations.  (*See* Exhibit J, VanIngen Expert Report (citing 49 C.F.R. 390.11))  NSC "is responsible to ensure that [its drivers] understand[] the proper means and methods to transport freight in a safe and compliant manner.  Such includes the means and methods to load, secure, and unload the freight accepted by NSC Hauling for transportation."  (*Id.*)

3.    ***Grady Kent.***

Plaintiff was a truck driver for NSC since in or about June 2015.  (Plf. Dep. 16:6-8, Ex. K, Plf. Resp. to Interrog. No. 17)  Plaintiff has had a commercial driver's license since he was 22, (Plf. Dep. 8:5-7), and has driven trucks for over 20 years.  (*Id.* at 48:5-25)  As a commercial truck driver, Plaintiff must adhere to the Federal Motor Carrier Safety Administration rules and regulations.  (Plf. Dep. 71:20-72:9)  These rules required, among other things, that drivers secure their loads and drive their trucks in a safe manner.  (Ex. J, VanIngen Rep. at 4-5)  When asked if he "underst[oo]d that [freight] could possibly fall off if it was not secured," he replied "Well, yes, ma'am."  (Ex. A to Reply Br. at 33:12-14)  Plaintiff testified that the reason he secured loads at prior employers was "[s]o that whatever was loaded would stay on the trailer" and so that the freight "wouldn't fall off of the trailer."  (*See* Exhibit A, Plf. Dep. 45:17-23, 33:8-11, 32:5-15, 30)[1] Plaintiff also testified that it is his responsibility to ensure that he delivers the OCC bales in a safe manner.  (Plf. Dep. 66:8-24, 67:18-23; *see also* Carter Dep. 35:15-18 (explaining that the driver is responsible for the "safe transport- -- loading, transportation and preparation of that vehicle for our employees to offload it"))

As a driver for NSC, Plaintiff was responsible for loading and delivering OCC bales.  (Plf. Dep. 49:6-14, 76:12-15)  He was instructed by NSC to load the bales in either a five-stack or six-stack method.  (*Id.* at 55:3-58:14 (explaining that someone named Barry with NSC trained

---

[1]Though this testimony related to loading flatbeds, Plaintiff admitted that securing his load was a constant requirement in all of his jobs as a truck driver.  (Id. at 45:24-46:2)

him on how to load the bales on the back of his truck))  Before his first delivery to the mill,

Plaintiff's NSC supervisor, Joaquin Bates, instructed him that an IP employee must observe him

using the red strap before he opens his doors, that he must discern whether there was any

"pressure" against the doors, and if not then he should take the strap off and give it back to the IP

employee.  (Plf. Dep. 78:23-81:1)  He could then proceed with opening his trailer doors.  (*Id.*)

Plaintiff was responsible for and did open his trailer doors each time he made a delivery

to the IP mill.  (Plf. Dep. 105:15-106:1)  Plaintiff estimated that before March 30, 2016 he had

made at least 20 deliveries of OCC bales from Mississippi to the IP Bogalusa, Louisiana mill.

(*Id.* at 76:24-77:16)  Plaintiff did not notice any tension on the trailer doors on these occasions

and was not injured during any of these deliveries.  (*Id.* at 78:6-23, 155:6-12)

**B.**     **The Date of the Incident.**

1.     ***Plaintiff loaded his truck and drove over an hour to the mill.***

On March 30, 2016, Plaintiff drove his 53 foot truck to two Walmart stores in Mississippi

to load OCC bales for delivery to the mill.  (Plf. Dep. 87:24-90:21)  Plaintiff loaded some bales

at one Walmart location and drove to a second Walmart location in Brookhaven, Mississippi to

load additional bales.  (*Id.*)  Ultimately, Plaintiff loaded his truck with 38 OCC bales.  (Plf. Dep.

75:1-4)  Plaintiff used a bobcat to load 35 of the bales in a five-stack format, meaning he

interchanged between having three bales on one side and two on the other side of the trailer.  (*Id.*

at 75:5-7, 88:20-23, 91:19-23)  Plaintiff then loaded three additional bales stacked on top of each

other and positioned parallel to the trailer doors.  (*Id.* at 116:13-117:14; *see also* Exhibit L,

Photograph of Kent's Truck)  These bales could not fit lengthwise.  (*Id.* at 57:5-58:3; Carter Dep.

79:16-80:8)  Plaintiff estimated that there was about one foot of space between the doors and the

last row of bales that he loaded.  (Plf. Dep. 91:24-92:8)  Plaintiff did not secure the bales to

prevent them from shifting.  (*Id.* at 112:23-113:19)  Plaintiff's practice was to "secure" the load simply by ensuring the truck doors would close.  (*See id.* at 154:8-19, 68:25-70:3)

International Paper had no involvement in and did not provide any instruction to Plaintiff regarding how he loaded his truck trailer.  (Plf. Dep. 108:5-15)  After loading his trailer, Plaintiff drove from Brookhaven, Mississippi to Bogalusa, Louisiana to deliver the bales to the mill.  (Exhibit K, Plf. Resp. to Interrog. No. 2; Plf. Dep. 72:10-19, 91:16-18)

 2. ***Plaintiff did not observe tension on the strap before opening his truck doors.***

Plaintiff parked his truck in front of the loading dock and called for an IP employee.  (*Id.* at 97:17-22)  Albert Browhaw was the IP employee who arrived at the loading dock.  (Exhibit E, Browhaw Dep. 40:16-24)  Daniel Norsworthy, who was in training, also arrived at the dock to observe the red strap procedure.  (Exhibit M, Norsworthy Dep. 24:22-25:17)

Browhaw provided the red strap.  (Browhaw Dep. 39:4-6)  After the red strap was placed on the doors,[2] Plaintiff opened the trailer doors.  (Plf. Dep. 101:23-103:24; Browhaw Dep. 21:8-13, 41:8-10)  Plaintiff and Browhaw both observed for tension on the red strap.  (Browhaw Dep. 26:16-27:4)  Plaintiff did not detect tension on the red strap.  (Plf. Dep. 81:5-7, 100:17-23, 101:1-6)  Browhaw did not detect tension on the red strap.  (Browhaw Dep. 42:22-25, 93-94)  Norsworthy, who was observing from the dock, also did not notice tension on the strap.  (Norsworthy Dep. 25:19-20 (watching from the dock), 30:22-25 (no bales leaning), 31:9-32:3 (detected no tension))  After all parties confirmed they did not detect tension on the red strap,

---

[2]Plaintiff testified that he placed the red strap on his doors.  (Plf. Dep. 100:14-18)  However, Browhaw testified that he placed the red strap on the doors.  (Browhaw Dep. 41:2-7)  Norsworthy also testified that Browhaw placed the red strap on the doors.  (Norsworthy Dep. 29:24-30:13)  Regardless, the fact of who initially placed the red strap on the trailer doors is not a genuine issue of material fact.   A dispute is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* Who put the strap on or even took it off would not affect the outcome of this case.  What is material is that Plaintiff did not detect tension on the strap and he opened his own truck doors.

Browhaw walked to the top of the loading dock to prepare to unload the truck, (Browhaw Dep. 43:24-44:6, 91:10-19; Plf. Dep. 101:16-102:2). Plaintiff removed the strap from the trailer doors and gave it to Mr. Browhaw. (Plf. Dep. 101:14-18) Plaintiff then began opening his trailer doors. (*Id.* at 101:23-103:24) Plaintiff had no concerns about opening his trailer doors. (Plf. Dep. 101:1-6) At all times, Plaintiff maintained control of his truck and his actions as he opened the trailer doors. (*Id.* at 109:11-19) Mr. Browhaw *did not* provide any direction or instruction to Plaintiff as he opened the doors of his truck. (Plf. Dep. 107:16-18, 106:8-107:15)

3. ***Plaintiff positioned his body directly in front of the trailer doors as he pushed open the doors.***

After removing the red strap, Plaintiff pushed open the right trailer door of his truck and pinned it back. (Plf. Dep. 101:23-102:6; Ex. K, Plf. Resp. to Interrog. No. 2) No bales fell out. (Plf. Dep. 136:22-137:12) Although the right door was completely open, Plaintiff did not look inside the trailer to confirm it was safe before he began opening the left door. (*Id.* at 105:10-14) Instead, Plaintiff stood between the bales and the trailer door, placed one hand on the inside of the left door and began pushing the left door open with one hand and then two hands. (*Id.* at 103:7-24) As Plaintiff pushed open the left door, two bales fell out of the trailer. (*Id.*) The first bale hit Plaintiff, knocking him to the ground, and the second bale fell on top of Plaintiff. (*Id.*, 104:12-14) Plaintiff's left leg was broken. (*Id.*) IP employees promptly removed the bale using a clamp truck and called for medical attention. (*Id.*; Browhaw Dep. 82:1-3; Norsworthy Dep. 34:7-35:3; Exhibit N, Jones Dep. 32:10-24)

Plaintiff's body was directly in the "line of fire" as he opened the truck doors. (Carter Dep. 78:10-19) Specifically, Plaintiff stood directly in front of the bales as he pushed opened the

doors. (*See id.*; Browhaw Dep. 46:8-20, 47:12-49:2, 87:5-13[3]; Plf. Dep. 103:1-24) Plaintiff should have stood behind the doors to pull the doors open rather than in front of the doors to push them open. (Browhaw Dep. 46:8-20, 47:12-49:2, 86:18-87:13; Carter Dep. 78:10-19; *see also* Ex. D, Red Strap Policy) Standing behind the doors allows the doors to provide the driver added protection from the hazard of being hit by material that could fall out of the trailer. (Browhaw Dep. 87:5-13; Carter Dep. 59, 77, 81) "Standard industry practice, because this is a recognized hazard in the trucking industry, is for the driver that opens the van doors to stand behind the doors, walk the door back to the securing point on the side of the trailer using the doors as a shield from falling freight." (Exhibit O, Hunter Expert Rep. at 4) Plaintiff did not follow industry standard to safely open his truck trailer (or van) doors.

## C. The Investigations.

### 1. *WestRock and NSC concluded that the incident occurred because of the improper load pattern used by Plaintiff to load his trailer.*

Timothy Irons, who was the recovered fiber leader at the mill, notified the OCC vendors about the March 30, 2016 incident via email. (*See* Ex. B) WestRock responded to the notification asking whether one of its carriers was involved and indicating that all of its carriers already knew IP's safe loading pattern. (*Id.*) Mr. Irons informed WestRock that a NSC driver was involved and that WestRock/NSC had been assessed a strike due to the unsafe load. (*Id.*)

WestRock contacted its supplier, NSC, concerning the incident, informed NSC that the incident was due to improper load pattern, and requested a corrective action plan from NSC. (*See* Ex. B) NSC created a double check action plan that would require the driver to take photographs of his load and obtain approval to deliver the same. (Ex. I, NSC Memo) NSC also explained in the memo that it "currently has a policy for load patterns for [its] trailers, and

---

[3]Mr. Browhaw immediately yelled to get Plaintiff's attention once he noticed Plaintiff's improper body position. (Browhaw Dep. 49:8-12, 87:5-16)

unfortunately this d[r]iver did not follow policy." (*Id.*) Tellingly, NSC had been cited for an unsafe load pattern at a different IP mill four months before Plaintiff's March 2016 incident. (11-2015 Unsafe Load Pattern Email Chain) In response to the November 2015 unsafe load pattern, NSC sent WestRock a corrective action plan that is nearly identical to the one NSC sent WestRock after the incident forming the basis of the Amended Complaint. (*Cf. id.* at 11-23-15 NSC Load Approval Procedure with Doc. No. 72-9)

2. ***International Paper's investigation revealed that Plaintiff's load pattern and body position caused the incident.***

International Paper investigated the root cause of the incident. (Carter Dep. 45:5-49:19) IP's investigation revealed that Plaintiff's load pattern coupled with his improper body position as he opened the trailer doors were root causes of the incident. (Carter Dep. 59:3-21, 78:1-79:4, 79:23-80:18; Exhibit P, Life Lesson)

**D.     Plaintiff's Claims.**

Plaintiff filed the Complaint on May 10, 2017 asserting a premises liability claim against International Paper and seeking punitive damages. (Exhibit Q, Compl.)[4] Plaintiff claims that IP "was required to take adequate safety measures to prevent Kent and others from foreseeable workplace dangers." (*Id.* at ¶ 19) Plaintiff also claims that IP's alleged violation of these duties, rules and standards "was reckless as well as negligent." (*Id.* at 23) Plaintiff contends IP "turned a blind eye to the known risks and consequences of unloading a truck on an incline." (*Id.*) Plaintiff filed an Amended Complaint with same claims. (Exhibit R, Am. Compl.)

---

[4]Plaintiff's complaint referenced a negligence per se claim due to IP's alleged "failure to provide a clean work surface and to provide protections against fall through the front opening of the platform" in violation "of OSHA regulations." (Am. Compl. at ¶ 23) Plaintiff responded in discovery that "as there is no platform or fall at issue here statements relating to those items were included in the Complaint in error." (Plf. Resp. to Interrog. No. 10) Accordingly, Plaintiff's negligence per se claim is unsupported, improper, and should be dismissed. *See Faul v. Perlman*, 104 So. 3d 148, 156 (Miss. Ct. App. 2012) (affirming dismissal of negligence *per se* claim where specific statute not alleged in complaint and plaintiff failed to present competent evidence to support the claim).

Despite these contentions, Plaintiff testified that he did not believe that IP did anything intentionally to cause him injury or that Browhaw failed to do something that caused his injury. (Plf. Dep. 142:17-23)  Instead, he claims IP is liable simply because he "got hurt" while on International Paper property despite using the red strap.  (*See id.* at 130:9-18)  IP denies the allegations. (Exhibit S, Answer Compl.; Exhibit T, Answer to Am. Compl.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, viewing the evidence most favorably to the nonmoving party, "the pleadings, depositions, . . . and admissions on file, together with any affidavits," show there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment is not disfavored but looked upon as an important process where the parties can obtain a "just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Once the moving party's initial burden of showing the absence of material fact is satisfied, the burden shifts to the nonmoving party.  *Id.*  The nonmoving party must then produce specific and "significant probative evidence" showing there is a genuine issue of material fact for trial.  *Id.*

Summary judgment should be granted where a plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden."  *Celotex*, 477 U.S. at 322.  Mere unsubstantiated or conclusory allegations are not sufficient to withstand summary judgment or to create a fact issue.  *Little*, 37 F.3d at 1075.  Denials that are not supported by the record are insufficient to withstand summary judgment or create a fact issue.  *Id.*  The existence of a mere scintilla of evidence in support of the non-movant's position is also insufficient.  *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  There must be sufficient evidence on which the jury could reasonably find for the non-movant.  *Id.*

# IV. ARGUMENT

Plaintiff's negligence and premises liability claims fail as a matter of law. International Paper is immune from liability for Plaintiff's injury, IP owed no duty to Plaintiff and no alleged breach by IP caused Plaintiff's injury. Plaintiff's claims should be dismissed with prejudice.

## A.    International Paper is Immune From Liability for Plaintiff's Injury.

The Louisiana Workers' Compensation Act ("LWCA") applies to both direct employer/employee relationships, as well as to statutory employer/employee relationships. *McCann v. Best Buy Co.*, No. CV 17-00108-BAJ-RLB, 2018 WL 3244999, at *3 (M.D. La. July 3, 2018) (citing § 23:1061). With regard to "statutory employers," the LWCA provides:

> [W]hen any "principal" ... undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any ... "contractor", for the execution ... of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 . . . .

§ 23:1061(A)(1). "Simply put, a statutory employer/employee relationship can arise when, in conformance with [ ] § 23:1061, a principal hires a contractor to perform services that are part of the principal's business; in this situation, the principal can become the statutory employer of the contractor's employees." *Nielsen v. Graphic Packaging Intern., Inc.*, 469 F. App'x 305, 307 (5th Cir. 2012). For purposes of § 23:1061, "work" shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services. *McCann*, 2018 WL 3244999, at *3. "[T]he Louisiana legislature clearly intended for the exclusive remedy provisions of LSA—R.S. 23:1032 to be extended to all "principals," however far removed from the direct employer of the injured worker, who contracted to perform the work in which the injured party is engaged at the time of the injury." *McCann*, 2018 WL 3244999, at *4.

Consequently, the two-employer defense applies when "(1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Beddingfield v. Standard Construction Co.*, 560 So.2d 490, 491-92 (La. App. 1 Cir. 1990). In *McCann*, Best Buy entered into a written contract with T.D. Farrell as general contractor to remodel a store in Baton Rouge, LA; T.D. Farrell subcontracted with Thomas Grace Construction for the shelving and fixture work; and Thomas Grace subcontracted with American 9, who was the plaintiff's direct employer. *McCann*, 2018 WL 3244999 at *1. The plaintiff was injured in the course of his employment and received workers' compensation benefits from his direct employer. *Id.* The plaintiff also sued Best Buy (owner). *Id.* Best Buy filed a motion for summary judgment arguing it was a statutory employer and therefore immune from tort liability because it used contract employees. *Id.* at *2. The court concluded that the written contract did not explicitly provide that Best Buy was a statutory employer, however, Best Buy was a statutory employer because it was a principal since it contracted to perform the renovations with a contractor who hired a subcontractor to execute the work and the plaintiff was an employee of one of the subs hired to execute the work; and, the renovation was essential to Best Buy's ability to generate and sell its products, goods and services. *Id.* at *4. The same conclusion can be reached in this case.

Here, International Paper had an agreement with WestRock to deliver OCC bales to the mill for IP's use to generate and sell its paper products, WestRock subcontracted with NSC to deliver the OCC bales to the mill, and Plaintiff was an employee of NSC who drove and delivered the OCC bales to the mill. Receipt of the OCC bales is essential to International Paper's ability to generate and sell its products. Therefore, the business, trade, or occupation

defense under §§ 23:1061(A)(1) & (2) and definition of principal under 23:1032(A)(2) applies and IP is a statutory employer entitled to tort immunity under § 23:1032 of the LWCA. *See also Orillion v. Alton Ochsner Medical Foundation*, 685 So. 2d 329 (5th Cir. 1996) (affirming dismissal of building owner under two-contract employer defense). As such, Plaintiff's claims should be dismissed with prejudice.

**B.    Plaintiff's Negligence Claim Fails As A Matter of Law.**

Even if IP is not immune from liability, Plaintiff's negligence and premises claims fail as a matter of law because Plaintiff is not able to establish each element of each claim.

1.    *Legal Standard.*

Under Louisiana law, liability for negligence is determined according to a duty/risk analysis. *Terese v. 1500 Lorene LLC*, No. CIV.A. 09-4342, 2010 WL 4702369, at *2 (E.D. La. Nov. 12, 2010) (citing *Fowler v. Roberts*, 556 So. 2d 1 (La. 1989)). Plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or proximate cause element); and (5) actual damages (the damages element). *Id.* (citing *Kirklin v. U.S. Government*, 2001 WL 1262618, at *2 (E.D.La. Oct. 18, 2001)).

The existence of a duty is question of law. *Id.* at *3. It is well-settled under Louisiana law that "property owners are not liable for the negligence of an independent contractor doing work on the property." *Id.* It is also well-settled that "a principal is not liable for the negligent acts of an independent contractor in the course of performing a contract." *Iglesias v. Chevron U.S.A. Inc.*, 656 F. Supp. 2d 598, 601 (E.D. La. 2009) (citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994)). There are two exceptions to these general rules: if the activity is

ultrahazardous or if the principal or owner exercises operational control over the independent contractor's performance. *Id.* (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987) *cert. denied*, 485 U.S. 1034 (1988) ("Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties")). The owner of a facility has an independent duty to exercise reasonable care for the safety of those on the premises, including independent contractors. *Terese*, 2010 WL 4702369 at *3 (citing *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994))

Nevertheless, "Louisiana law imposes no duty upon a principal to intervene or interject itself to stop the unsafe activities of its independent contractor, even if the principal's intervention could have prevented an accident. Moreover, [an] owner's duty 'to ensure the safety of the premises is implicated only when the owner creates the hazardous condition at issue.'" *Galbraith v. Constr. Tech. Servs., Inc.*, No. CIV.A. 13-00449-SDD-, 2015 WL 542305, at *2 (M.D. La. Feb. 10, 2015) (dismissing negligence claims because owner did not create the unsafe condition or exercise control over the contractor); *see also Iglesias*, 656 F. Supp. 2d at 602 (citing *Thomas v. Burlington Resources Oil & Gas Co.*, 2000 WL 1528082 (E.D. La. 2000)).

      2.     ***International Paper Did Not Owe Plaintiff a Duty to Warn.***

      a.     <u>IP did not create the hazard.</u>

Under Louisiana law, an owner has no duty to keep the premises reasonably safe unless the owner created the hazardous condition at issue. *Galbraith*, 2015 WL 542305 at *2. Here, Plaintiff was injured when two OCC bales that he loaded on his truck fell out of the truck and onto him as he opened his trailer doors. The undisputed record evidence demonstrates that the way Plaintiff loaded the bales was not safe. Plaintiff, not IP, created the hazardous condition.

Plaintiff testified that, at all times, he maintained control of his truck, he loaded the trailer, he was responsible for safely transporting the bales, and he opened his trailer doors. (Plf.

Dep. 109:11-19)  On the date of the incident, Plaintiff used a bobcat to load 35 OCC bales in a five-stack format.  (*Id.* at 75:5-7, 88:20-23, 91:19-23)  Plaintiff then loaded three additional bales stacked on top of each other and positioned parallel to the trailer doors.  (*Id.* at 116:13-117:14; *see also* Exhibit L, Photograph of Kent's Truck)  These bales could not fit lengthwise.  (*Id.* at 57:5-58:3; Carter Dep. 79:16-80:8)  Nevetheless, Plaintiff *did not* secure the OCC bales; Plaintiff did not check his load to determine whether the load could shift during transit; and Plaintiff did not follow IP's loading pattern or NSC's loading policy.  (Plf. Dep. 112:23-113:19, 113:8-19; Carter Dep. at 59:3-21; Ex. B, Email; Ex. I, NSC Memo)  Simply put, IP did not affirmatively create a hazardous condition on Plaintiff's truck trailer; Plaintiff created the hazard.  *See Kent v. Gulf States Utilities Co.*, 418 So. 2d 493, 500 (La. Sup. Ct. 1982) (finding no liability where owner did not "affirmatively create a hazardous condition").

Further, "[i]t is well established that Courts do not require a principal to discover and correct unsafe loading procedures performed by independent contractors."  *Iglesias*, 656 F. Supp. 2d 598 (granting summary judgment for owner because it did not load the cargo basket or otherwise create the hazard); *see also Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994). The record is undisputed that the manner in which Plaintiff loaded the truck trailer was unsafe. When shown a picture of Plaintiff's load, Norsworthy testified that he could "immediately tell it was an unsafe load."  (Norsworthy Dep. 40:20-24)  Norsworthy explained that "the first bales inside the doors have to be situated so they are longways so they cannot roll out." (*Id.* at 41:1-3) Browhaw similarly testified that the manner in which the bales were loaded was not safe. (Browhaw Dep. 100:13-24, 101:11-17)Carter explained that the loading was improper and unsafe (Carter Dep. 59:3-21, 79:16-80:18); and IP's trucking industry expert, Rick Hunter,

explained it was improperly loaded (Hunter Report at 3, Conclusion #2)  IP is not liable for Plaintiff's unsafe loading procedures.

b.    IP did not control Plaintiff's actions.

IP is not liable for the negligence of an independent unless the activity is ultrahazardous or IP exercised operational control over Plaintiff's performance of his work.  It cannot be argued that loading a truck with OCC bales and opening the truck trailer doors is ultrahazardous because, among other things, this activity does not relate to IP's land.[5]  Moreover, IP did not exercise operational control over Plaintiff.

The court in *Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320 (La. App. 3d Cir. 1985), wrote that the "control" determination "depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant."  *Id.* at 322 (emphasis in original) (citation omitted).  Additionally, the Fifth Circuit "has long held that there is no operational control unless the principal retains control over the methods and manner of the work, *i.e.*, gives 'how to' instructions to the independent contractor."  *Iglesias*, 656 F. Supp. 2d at 601 (citing *Grammer v. Patterson Services, Inc.*, 860 F.2d 639, 645 (5th Cir.1988), cert. denied, 491 U.S. 906 (1989)).

Here, the contractual agreement between WestRock and IP provides that WestRock, not IP, has the right to control the manner and means of the work.  Moreover, IP did not give "how

_____

[5]Whether an activity qualifies as ultrahazardous in Louisiana is a question of law. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987) (citing *Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir. 1985)).  The doctrine is defined by three boundaries: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury. *Perkins*, 762 F.2d at 1267-68.  The third element requires that the activity "can cause injury to others, even when conducted with the greatest prudence and care." *Kent v. Gulf States Utils. Co.*, 418 So.2d 493, 498 (La.1982). The "ultrahazardous" label is thus limited to those activities which present "a risk of harm that cannot be eliminated through the exercise of due care." *O'Neal*, 715 F.2d at 202.

to" instructions to Plaintiff on the date of the incident. Indeed, Plaintiff testified that no one from IP directed Plaintiff on how to load his trailer or on how to open his trailer doors on the date of the incident. (Plf. Dep. 106:8-107:18; *see also* Browhaw Dep. 98:2-7) Consequently, IP did not exercise operational control over Plaintiff's actions. Relatedly, Browhaw's supervision of Plaintiff's use of the red strap does not alter this conclusion. "The mere right of supervision is not sufficient to exercise operational control." *Iglesias*, 656 F. Supp. 2d at 601 (citing *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989); *see also Wallace v. Oceaneering International*, 727 F.2d 427 (5th Cir. 1984); *Etheridge v. Sub Sea International, Inc.*, 1992 WL 116031 (E.D. La. 1992)(Carr, J.)).

      c.      <u>IP is not contractually liable for Plaintiff's injury.</u>

The purchase order between IP and WestRock provided that WestRock "is solely responsible for the safety of the employees of [WestRock] and its subcontractors and the means and methods utilized by it or its subcontractors' employees in performing the services . . . and [WestRock] agrees that [IP] shall have no such responsibility." (Ex. G, at ¶ 23) This language, alone, requires dismissal of Plaintiff's claims against IP because IP has no responsibility for the safety of WestRock's subcontractors, *i.e.* NSC and NSC's employees, or the means and methods used by such employees. *See Robertson v. Arco Oil & Gas Co.*, 948 F.2d 132 (5th Cir. 1991) (affirming dismissal of plaintiff's claims because owner had contractual agreement with independent contractor that contractor had primary responsibility for the safety of its operations and the safety of its personnel).

      3.      ***Even if International Paper owed Plaintiff a duty to keep the premises reasonably safe, IP did not breach this duty.***

It is undisputed that Plaintiff was not injured by a condition on IP property; he was injured by a condition on his own truck trailer, *i.e.* the OCC bales. The premises have not been

substantively altered since the incident, (IP's Resp. to Interrog. No. 18), and the red strap policy is still enforced. Further, no other truck drivers who have made deliveries to the mill and used the red strap have reported bales falling out of his or her trailer since Plaintiff's incident. (Carter Dep. 29:3-9) And, there were no such reports before the incident. (*Id.* at 80:19-81:11; Browhaw Dep. 66:15-67:5, 85:15-86:3) IP did not breach a duty to keep the premises reasonably safe.

      4.     ***International Paper did not cause Plaintiff's injury.***

The causation analysis involves cause-in-fact and proximate cause. Cause-in-fact "is generally a 'but for' inquiry such that if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, the conduct is a cause-in-fact. *Lahare v. Valentine Mech. Servs., LLC*, 17-289 (La. App. 5 Cir. 6/29/17), 223 So. 3d 773, 778 (citing *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1991)). The legal cause depends on determinations of foreseeability and ease of association. *Id.* A "risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated because there was no ease of association between that risk and the legal duty." *Id.*

The undisputed record evidence demonstrates that Plaintiff's injury was caused by unsafe loading and improper body position as he opened the trailer doors. These actions were the cause in fact of Plaintiff's injury. "But for" Plaintiff's failure to safely and properly load the OCC bales, failure to secure the bales, and decision to stand directly in front of the bales as he opened the trailer doors in contravention of industry safety standards and practices that required he use the trailer door as a barrier and stand to the side of the trailer as he opened the doors, his injury would not have occurred. No action or inaction by IP caused Plaintiff's injury.[6] Moreover, Plaintiff's unsafe loading and improper body position was not reasonably foreseen or anticipated

---

[6]Plaintiff's expert testified that he is not providing an opinion that the condition of the facility caused or contributed to the bales falling out of the trailer. (Exhibit U, Paulus Dep. 87:7-15)

by IP.  Indeed, IP's duty was to keep the premises reasonably safe, not to protect Plaintiff from his own negligence.

**C.     Plaintiff's Premises Claim Should be Dismissed as a Matter of Law.**

1.      *Legal Standard.*

Louisiana Civil Code art. 2322 governs liability for property owners and articles 2317 and 2317.1 govern liability for one in custody of things.  Plaintiff's claims fail under both theories of liability because there was no ruin or defect on IP property that caused his injury, IP did not have custody of the OCC bales, and the OCC bales did not have a defect.

2.      *Plaintiff's claims fail under Article 2322.*

To prevail on a claim under article 2322, which applies to damage caused by the "ruin" of a building, Plaintiff must prove that the ruin was "caused by neglect to repair it, or [was] the result of a vice or defect in its original construction." La. Civ. Code. art. 2322. Plaintiff must also prove Defendant "knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that [the Defendant] failed to exercise such reasonable care." *Terese*, 2010 WL 4702369, at *4 (quoting La. Civ. Code art. 2322).

Here, Plaintiff's injury was not caused by a "defect" or "ruin" on IP property and there was no neglect by IP to repair any such defect or ruin.  The injury was caused by the OCC bales that Plaintiff loaded.  Moreover, there is absolutely no evidence to support a finding that IP knew or reasonably should have known about the hidden danger on Plaintiff's truck trailer, that IP could have prevented the injury or that IP failed to exercise reasonable care. Consequently, Plaintiff's premises liability claim must fail as a matter of law.

3.      ***Plaintiff's claim fails under Articles 2317 and 2317.1.***

Article 2317 provides that, "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." A plaintiff proceeding on a theory of liability under article 2317.1 must prove that: "(1) the thing which caused damages was in the control or custody of the defendant; (2) the thing had a defect that created an unreasonable risk of harm; (3) the injuries were caused by the defect; and (4) the defendant had actual or constructive knowledge of the defect." *Nelson v. Louisiana Stadium and Exposition Dist.*, 832 So.2d 1043, 1047 (La. App. 4 Cir. 2007). Custody involves the right of supervision, direction, and control. *Haydel v. Hercules Transport, Inc.*, 94–0016, at * (La.App. 1 Cir. 4/7/95); 654 So.2d 408, 414. IP must have custody of the thing at the time it causes the injury. *See Goudchaux v. State Farm Fire & Cas. Co.*, 407 So. 2d 1317, 1320 (La. App. 3 Cir.1981). Defect "is an imperfection or deficiency which inheres with relative permanence in a thing as one of its qualities." *Haydel*, 727 So.2d at 415. A temporary condition does not constitute a defect under Article 2317. *Id.*

IP did not have custody of the OCC bales at the time of Plaintiff's injury. The OCC bales were still on Plaintiff's truck trailer, and IP had not begun unloading the OCC bales. Plaintiff even testified that he controlled his truck at all relevant times. Regardless, there was no defect in the OCC bales, and reasonable care by Plaintiff to safely load the OCC bales on his truck trailer could have prevented his injury. Therefore, the issue in this case was a temporary condition, which does not constitute a defect under Article 2317. Further, IP did not have actual or constructive knowledge of the unsafe manner in which Plaintiff loaded his truck. IP did not direct Plaintiff or assist him in loading his trailer. Moreover, neither Plaintiff nor Browhaw detected tension on the red strap, and Browhaw had no reason to believe that a bale would fall out of the trailer. (Plf. Dep. 100:19-25; Browhaw Dep. 93:8-94:24) Plaintiff even testified that

nothing appeared different from the prior occasions wherein he used the red strap without incident. (Plf. Dep. 101:1-6) He had no reason to expect bales to fall:

> Q. Okay. Did you happen to look inside the truck before you started opening that left door?
> A. Well, I had already opened the right door, so I mean, nothing -- not had moved, so, you know, you're not -- you're not expecting anything.

(Plf. Dep. 105:10-14) In short, there was no knowledge on the part of International Paper of the unsafe load. Rather, Plaintiff, who failed to safely load his truck, failed to secure the load, and who stood directly in front of the bales as he opened the trailer doors, knew or should have known that the unsecured bales could have shifted during transit, that bales could fall out once he opened the trailer doors, and that he could be injured by standing in front of the bales. Under such circumstances, Plaintiff's claims fail as a matter of law.

## V. CONCLUSION

Plaintiff testified that IP is liable simply because "he got hurt" while on IP property after using the red strap test. (Plf. Dep. 130:9-15) When asked what other reasons supported his claim, he said "what other reason would there be." (*Id.* at 130:16-18) Plaintiff's injury, without more, does not establish liability. International Paper did not create the hazard and did not act negligently to cause Plaintiff injury. Moreover, IP is immune from suit for Plaintiff's injury. For the reasons discussed herein and the reasons previously argued by IP in its initial summary judgment motion, Plaintiff's negligence/premises liability claim fails as a matter of law, and should be dismissed with prejudice.

This the ____th day of September, 2018.

Respectfully submitted,

INTERNATIONAL PAPER COMPANY

By Its Attorneys,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: /s/_____

Bradley W. Smith (MS Bar No. 9834)
Nakimuli Davis-Primer (MS Bar No. 103320)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING:  Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL:  One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi  39211
Telephone:  (601) 351-2400
Facsimile:  (601) 351-2424
bsmith@bakerdonelson.com
ndavisprimer@bakerdonelson.com

**<u>CERTIFICATE OFSERVICE</u>**

I hereby certify that I have this day electronically filed the foregoing *Memorandum in Support of Amended/Second Motion for Summary Judgment* with the Clerk of the Court using the ECF system which sent notification of such filing to counsel of record.

This _____th day of September, 2018.

<u>*/s/*_____</u>